UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LINDA S. MARTELLO,

                              Plaintiff,

         v.                                              **DECISION AND ORDER**
                                                         12-CV-215S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

         1.       Plaintiff, Linda Martello, challenges an Administrative Law Judge's ("ALJ")

determination that she was not disabled within the meaning of the Social Security Act ("the

Act").   Martello alleges that she has been disabled since January 14, 2008, due to

fibromyalgia, diabetes, anxiety, depression, obesity, genital herpes, irritable bowel

syndrome, and heart problems.   She maintains that these impairments rendered her

unable to work, and asserts that she is entitled to disability insurance benefits under the

Act.

         2.       Martello filed an application for benefits under Title II of the Act on June 12,

2008, alleging an inability to work since January 14, 2008.   The Commissioner of Social

Security ("Commissioner") denied the initial application and, as a result, Martello requested

an administrative hearing.   Administrative Law Judge ("ALJ") Robert T. Harvey held a

hearing on July 21, 2009, at which Martello appeared with counsel and testified.   The ALJ

considered the case *de novo*, and on August 11, 2009, issued a decision denying

Martello's application for benefits.   Martello filed a request for review with the Appeals

Council, which granted the request and remanded the case to the ALJ for a new hearing.

A second hearing was held on May 11, 2011.  The ALJ issued a decision, on May 26, 2011, denying the application for benefits.  The Appeals Counsel denied Martello's request for review on January 18, 2012.  Martello filed the current civil action on March 15, 2012, challenging the Commissioner's final decision.[1]

3.       On August 20, 2012, Martello filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The Commissioner filed his motion for judgment on the pleadings on August 22, 2012.  The motions were fully briefed on September 24, 2012, at which time this Court took the matter under advisement without oral argument.  For the reasons set forth below, the Commissioner's motion is denied, and Martello's motion is granted in part and denied in part.

4.       A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.       "To determine on appeal whether the ALJ's findings are supported by

---

[1]  The ALJ's May 26, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

3

severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Martello did not engage in substantial gainful activity since January 14, 2008 (R. 43);[2] (2) her diabetes mellitus, fibromyalgia, anxiety, depression, vision deficits, and obesity are severe impairments within the meaning of the Act (R. 43); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 44); (4) Martello retains the residual functional capacity ("RFC") to perform light work, with enumerated exceptions and limitations (R. 45); and (5) she is able to perform her past relevant work as a Cashier II (R. 48).  Ultimately,

---

[2] Citations to the underlying administrative record are designated as "R."

the ALJ concluded that Martello was not under a disability as defined by the Act.  (R. 48.)

10.    Martello maintains the ALJ committed legal error and that his decision is not supported by substantial evidence.  She advances numerous arguments in support of remand or reversal.

11.    Martello first contends the ALJ should have contacted Dr. Stevens, who had treated her fibromyalgia since May 2008, for an opinion as to the severity of her physical limitations.  In support, Martello relies on 404.1512(e),[3] which provided that an ALJ:

> will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

(emphasis added).   The Commissioner maintains that because the ALJ obtained all treatment records from Dr. Stevens, the administrative record was properly developed, and there was no need to obtain an opinion from the treating physician.

It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding.  See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999); McClaney v. Astrue, 2012 U.S. Dist. LEXIS 123756, at *28-29 (E.D.N.Y. Aug. 10, 2012).  Where a treating physician has not assessed a claimant's RFC, the ALJ's duty to develop the record requires that he sua sponte request the treating physician's assessment of the claimant's functional capacity.  Myers v. Astrue, 2009 U.S. Dist. LEXIS

---

[3] This citation refers to the regulations in effect when this claim was adjudicated.  Effective March 26, 2012, 20 C.F.R. § 404.1512 was amended to, inter alia, remove paragraph (e).  77 FR 10651.

61396, at *6 (N.D.N.Y. July 17, 2009); see Felder v. Astrue, 2012 U.S. Dist. LEXIS 129384, at *30-31 (E.D.N.Y. Sept. 11, 2012) (Commissioner has affirmative duty to request RFC assessments from plaintiff's treating sources, despite otherwise complete medical history); 20 C.F.R. § 404.1513 (medical reports should include "[a] statement about what you can still do despite your impairment . . . .  We will request a medical source statement about what you can still do . . . .").

The cases on which the Commissioner relies do not hold otherwise, and are readily distinguished.  See Cichocki v. Astrue, 2012 U.S. Dist. LEXIS 106023, at *17-21 (W.D.N.Y. July 30, 2012) (ALJ who afforded no weight to treating physician's opinion was not required to recontact physician to resolve inconsistencies between his opinion and the record as a whole, including physician's own treatment notes); Casson v. Astrue, 2011 U.S. Dist. LEXIS 151199 (N.D.N.Y. Nov. 9, 2011) (ALJ did not fail in duty to develop record where claiman't counsel stated that he would provide a medical source statement from treating physician, the ALJ left record open to permit him to do so, and counsel did not thereafter provide opinion testimony).

In light of the settled authority applicable here, the Court concludes that the ALJ failed to adequately develop the record when he did not obtain opinions from Martello's treating sources regarding how her impairments affect her ability to perform work-related activities.  On remand, the ALJ is directed to attempt to obtain—through counsel or directly—opinions regarding Martello's functional limitations from Dr. Stevens and any other medical source who treated her on more than one occasion for one or more of her severe impairments.

12.     Martello's next argument also pertains to the RFC determination; she contends that the ALJ did not evaluate the effects of her obesity on her functional capacity,

in particular, consultative examiner Toor's statement that obesity interferes with Martello's routine.  The Commissioner notes that the ALJ expressly acknowledged Dr. Toor's statement, and urges that there is no basis to conclude that Martello's obesity caused limitations more restrictive than the ALJ's findings.

The Court agrees that an ALJ may be found to have sufficiently considered a claimant's obesity without engaging in an exhaustive discussion of the issue.  For example,"[w]hen an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions."  Cruz v. Barnhart, 2006 U.S. Dist. LEXIS 26914, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006).  But, that is not what occurred here.  Dr. Toor noted that Martello has moderate physical limitations in standing, walking, and sitting a long time, and mild to moderate limitations in twisting and reaching.  The ALJ declined to adopt these particular limitations, finding that Martello could perform "light" work that "requires a good deal of walking or standing, or . . . involves sitting most of the time."  (R. 45.) Absent some supporting explanation, the Court is unable to conclude that the ALJ did, in fact, evaluate the effects of obesity.

13.  In her third argument, Martello maintains the ALJ did not apply the appropriate legal standards (SSR 82-59) in finding that she failed to follow prescribed medical treatment.  The ALJ considered the issue of Martello's compliance in the course of assessing her credibility.

The Ruling to which Martello refers does not apply to credibility determinations. SSR 82-59 applies only where a claimant has been found incapable of any substantial gainful activity.  The applicable Ruling, SSR-96-7p, provides that:

> [T]he individual's statements may be less credible . . . if the medical reports or records show that the individual is not following treatment as prescribed and there are no good reasons for this failure.  However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case recour, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

1996 SSR LEXIS 4, at *21-22.  Here, the record repeatedly evidences noncompliance with prescribed medication, diet, and exercise.  (R. 477-78, 489-90, 578, 582-84, 591, 645, 665, 691, 695, 699, 703, 707, 710, 807, 810.)  The ALJ considered Martello's statement that her financial difficulties sometimes prevented her from taking medications, (R. 48), and she offered no explanation for failing to comply with prescribed diet and exercise for control of her diabetes.  In short, the ALJ applied the appropriate legal standard in concluding that Martello's "statements concerning the intensity, persistence, and limiting effects of these symptoms are generally credible but not to the extent alleged as they are inconsistent with the above residual functional capacity assessment."  See Raplee v. Astrue, 2012 U.S. Dist. LEXIS 109959, at *24-25 (W.D.N.Y. Aug. 6, 2012).  It also is clear that the ALJ considered the entire case record in assessing credibility, and did not test Martello's statements solely against his own RFC finding.  Ubiles v. Astrue, 2012 U.S. Dist. LEXIS 100826, at *36-37 (W.D.N.Y. July 2, 2012).

14.     Martello next attributes error to the ALJ on the ground that he "appears to require objective testing for fibromyalgia."  The Court disagrees and finds no error in this regard; the ALJ not only accepted the diagnosis of fibromyalgia, but included it among Martello's severe impairments.  As already determined, this case will be remanded for further consideration of the effects of her fibromyalgia.  Rivers v. Astrue, 280 Fed. Appx.

20, 22 (2d Cir. 2008) (fibromyalgia is not a *per se* disability and requires finding as to severity of symptoms and limitations).

15.     The final series of arguments relate to the ALJ's step four determination that Martello can perform her past relevant work as a "Cashier II," which is classified as light, unskilled work.   The arguments relative to transferability of skills and the medical-vocational guidelines are without merit because these issues arise only at step five of the sequential evaluation.   Martello's further assertion that the ALJ presented an "incomplete hypothetical question" to the vocational expert also is rejected.   Martello makes no attempt to explain how the hypothetical was incomplete or inconsistent with the RFC findings.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED in part and DENIED in part;

FURTHER, that the decision of the ALJ is REMANDED to the Commissioner of Social Security for further proceedings consistent with the above;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:  March 28, 2013
          Buffalo, New York

                                                    /s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                         Chief Judge
                                                 United States District Court